# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ENRIQUE ACOSTA-SIERRA,
Defendant-Appellant.

No. 10-50575

D.C. No.
3:09-CR-03175-
JAH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
December 7, 2011—Pasadena, California

Filed August 15, 2012

Before: Dorothy W. Nelson, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Nelson

## COUNSEL

Jason I. Ser (argued), Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

James P. Melendres, Assistant U.S. Attorney (argued), Bruce R. Castetter, Assistant U.S. Attorney, Chief, Appellate Section, Criminal Division, Laura E. Duffy, United States Attorney, Office of the United States Attorney, San Diego, California, for the plaintiff-appellee.

## OPINION

NELSON, Senior Circuit Judge:

Defendant-Appellant Enrique Acosta-Sierra ("Acosta-Sierra"), a 57-year-old native and citizen of Mexico who has been diagnosed with paranoid schizophrenia, appeals from his conviction, following a bench trial, of two counts of assault on a federal officer in violation of 18 U.S.C. § 111.

Acosta-Sierra raises four claims on appeal: (1) that the district court's findings of fact and conclusions of law pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure were insufficient to find Acosta-Sierra guilty of assault on a federal officer with a dangerous and deadly weapon in violation of 18 U.S.C. §§ 111(a)(1) & (b); (2) that the district court erred in denying Acosta-Sierra's motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure; (3) that the district court erred when it concluded that 18 U.S.C. § 111 did not require the government to prove specific intent, and thereby precluded Acosta-Sierra from presenting a diminished capacity defense; and (4) that the district court erred when it precluded mental health evidence in support of Acosta-Sierra's self-defense claim.

We have jurisdiction pursuant to 18 U.S.C. § 1291. We reverse in part, affirm in part, and remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

On June 18, 2009, Acosta-Sierra walked across the United States border from Mexico at the San Ysidro, California, Port

of Entry. While in a lane designated for vehicles, Acosta-Sierra threw a baseball-size piece of jagged concrete in the direction of United States Customs and Border Protection Officer Abram Lopez, who was walking approximately seven to eight feet in front of a closed, unmanned primary inspection booth.

The rock did not strike Officer Lopez, though it came within two feet of hitting his head. Officer Lopez did not see Acosta-Sierra throw the rock or observe it travel through the air. In fact, Officer Lopez only became aware of the rock when he heard it hit the metal gate behind him, and bounce off of the gate into the inspection booth. He did not fear immediate bodily harm at the time he heard the rock hit the gate. Instead, he felt stunned and confused.

It was only after Officer Lopez heard the rock hit the gate, repositioned himself to see from where the rock originated, saw Acosta-Sierra walking in his general direction from six to seven car lengths away, and observed his fellow officers moving to arrest Acosta-Sierra that Officer Lopez started to feel "a little scared of the situation that was going on." He did not see Acosta-Sierra holding any other rocks at that time.

Based on these events, the government charged Acosta-Sierra with assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1) and (b) ("Count 2").[1] The government alleged that Acosta-Sierra "did knowingly and intentionally and forcibly assault . . . United States Customs and Border Protection Officer A. Lopez, in that defendant did throw baseball size rocks at Agent Lopez while he was engaged in the performance of his official duties, and in committing such offense, did use dangerous and deadly weapons, to wit, rocks."

_____

[1]The government also charged Acosta-Sierra with illegal reentry after deportation in violation of 8 U.S.C. § 1326 ("Count 1"), though the district court subsequently dismissed this charge.

On December 7, 2009, while awaiting trial, Acosta-Sierra was transported to an individual holding cell at the courthouse. District Security Officer Mark Burrola approached Acosta-Sierra in the holding cell to handcuff him and to transport him to the courtroom. Acosta-Sierra walked backwards toward the cell door with his hands behind his back so that Officer Burrola could handcuff him, but when Officer Burrola opened the cell door, Acosta-Sierra turned around and punched Officer Burrola on the left side of his head. Although Officer Burrola did not require medical attention, his "ear felt hot."

In light of this incident, the government filed a Second Superseding Indictment which added Count 3 and charged Acosta-Sierra with assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) for "punch[ing] Officer Burrola, while Officer Burrola was engaged in the performance of his official duties."

Prior to trial, the district court denied Acosta-Sierra's in limine motions seeking to introduce expert testimony that Acosta-Sierra suffered from paranoid schizophrenia and delusions of being subject to persecution and torture by governmental authorities. The district court held that this evidence was not admissible to prove a diminished capacity defense because Section 111 is a general intent crime. The district court also held that this evidence was inadmissible to present a theory of self-defense because "there was no use of force, let alone any excessive force, from which one might reasonably suggest that a cognizable theory of self-defense would lie." Acosta-Sierra waived his right to a jury trial due to these rulings.

Following a two-day bench trial, the district court found Acosta-Sierra guilty on both counts of assaulting a federal officer and denied his Rule 29 motion for a judgment of acquittal. In finding Acosta-Sierra guilty of Count 2, the court found beyond a reasonable doubt (1) that Acosta-Sierra inten-

tionally used force in assaulting Officer Lopez, (2) that Officer Lopez was engaged in his official duties at the time of the assault, and (3) that the baseball-size rock that Acosta-Sierra threw constituted a dangerous or deadly weapon. As for the first element, the district court found that "there was a display of force" that "reasonably caused a person to fear immediate bodily harm." The district court also concluded that the government did not need to prove that Acosta-Sierra "intentionally used force against Officer Lopez or someone else" because "this is a general intent crime, not a specific intent crime."

In finding Acosta-Sierra guilty of Count 3, the court found beyond a reasonable doubt that Acosta-Sierra intentionally used force in assaulting Officer Burrola based on the "aggression" revealed by "the power of th[e] first punch" as well as the "way [Acosta-Sierra] went after [Officer Burrola] to try to hit him the second time." The court further found that there was no evidence that Officer Burrola applied any force, let alone excessive force, such that a reasonable person would consider self-defense necessary. In addition, the court found "more than sufficient evidence was presented for the Court to find beyond a reasonable doubt that Officer Burrola was performing in the execution of his official function at the time of the assault."

In November 2010, the district court sentenced Acosta-Sierra to 60 months in prison on Count 2 and 36 months on Count 3, with those terms to run concurrently, as well as three years of supervised release. Acosta-Sierra then filed a timely appeal.

## II.   STANDARD OF REVIEW

We review mixed questions of law and fact de novo. *See United States v. Juvenile (RRA-A)*, 229 F.3d 737, 742 (9th Cir. 2000). We also review de novo a district court's denial of a motion for a judgment of acquittal based on insufficient

evidence. *United States v. Chapman*, 528 F.3d 1215, 1218 (9th Cir. 2008). In so doing, we must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[W]hen faced with a record of historical facts that supports conflicting inferences . . . [we] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (internal quotation marks and citation omitted).

Whether diminished capacity is a defense to a charged offense is reviewed de novo. *United States v. Vela*, 624 F.3d 1148, 1154 (9th Cir. 2010). We review for abuse of discretion a district court's decision to admit or exclude scientific evidence. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).

## III. ANALYSIS

### A. Count 2

**[1]** Section 111 of 18 U.S.C. prohibits forcible assault on a federal officer "while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). Because Section 111 does not define assault, we have adopted the common law definition of assault as either (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Chapman*, 528 F.3d at 1219-20 *(quoting United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976)); *see generally United States v. Turley*, 352 U.S. 407, 411 (1957) ("[W]here a federal criminal statute uses a common-law term of established meaning without oth-

erwise defining it, the general practice is to give that term its common-law meaning.").

The first type of common law assault is an attempt to commit a battery. *United States v. Bell*, 505 F.2d 539, 540 (7th Cir. 1974). For this type of assault, there need not be physical contact with the intended victim, *see Chapman*, 528 F.3d at 1219 (explaining that "someone who threw a punch and missed" would be guilty of assault under Section 111), or reasonable apprehension on the part of the victim, *see United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) (explaining that "a showing of fear on the part of the victim" is not required under the attempted battery theory of assault).

The second type of criminal assault, sometimes called an "intent-to-frighten,"**²** derives from the law of torts, *Bell*, 505 F.2d at 540, and recognizes the importance of protecting individuals from the mental disturbance of being put in reasonable apprehension of bodily harm, *Price v. United States*, 156 F. 950, 953 (9th Cir. 1907) (citing *Beach v. Hancock*, 27 N.H. 223 (1853)). For this latter type of assault, one does not necessarily need to be put in actual danger. *Id.* at 952-53. Even if one is only put in reasonable apprehension of imminent harm, the "suffering is the same in the one case as in the other, and the breach of the public peace is the same." *Id.* (internal quotation marks and citation omitted).

Although the two types of common law assault involve distinct elements, the difference between them often goes unno-

---

**²***See* Wayne R. LaFave, 2 Substantive Criminal Law § 16.3(a), at 565, 568 n.28 (2d ed. 2003) (characterizing the second type of assault as "intentional scaring" or "intent-to-frighten," though noting that the words "scare" and "frighten" are sometimes used as shorthand "for the more cumbersome but more accurate expression 'causing reasonable apprehension of immediate bodily harm.' ") (quoting W. Prosser & W. Keeton, Torts § 10, at 44 (5th ed. 1984)); *see also United States v. Lee*, 199 F.3d 16, 19 (1st Cir. 1999) (referring to this second type of assault as "assault by menace").

ticed because a violation of one type is usually a violation of the other type as well. As a fitting example:

> If, with the intention of hitting X, D wrongfully threw a stone that X barely managed to dodge, then D would have been guilty of a criminal assault because he had attempted to commit a battery, and he would also have been liable in a civil action of trespass for assault because he had wrongfully placed X in apprehension of physical harm.

R. Perkins & R. Boyce, Criminal Law § 2, at 159 (3d ed. 1987). This example highlights the important nuances between the two prongs of common law assault. The question here is whether Acosta-Sierra is guilty of assault if the rock he threw narrowly missed Officer Lopez, and Officer Lopez did not see the rock or feel afraid until immediately after it landed.

Although Acosta-Sierra's rock-throwing seems to be a straightforward example of attempted battery, the district court analyzed his conduct under only the "reasonable apprehension of harm" prong of common law assault. In concluding that the attempted battery prong did not apply to this case, the district court was apparently misled by the Ninth Circuit Pattern Jury Instructions in effect at the time of Acosta-Sierra's trial, which stated that an assault occurs only "when one person intentionally [strikes] [wounds] another, or when one person intentionally makes a display of force which reasonably causes a person to fear immediate bodily harm." 9th Cir. Model Crim. Jury Instr. 8.2 (2008); *but see Chapman*, 528 F.3d at 1219 (holding that assault, for purposes of Section 111, incorporates the common law definition of assault).[3]

---

[3]The instructions now correctly include attempted battery as a basis for forcible assault by stating that "[t]here is a forcible assault when one person intentionally strikes another, *or willfully attempts to inflict injury on another*, or makes a threat coupled with an apparent ability to inflict injury

In concluding that Acosta-Sierra's rock-throwing constituted assault under the "reasonable apprehension of harm" prong, the district court made the following factual findings:

> Officer Lopez, while crossing through lane 12 in front of its closed gate, heard a very loud bang. At that moment, he shrugged and managed with his peripheral vision to see an object bounce off the top of the closed gate into one of the unmanned booths and then to the ground. He noticed that the object was a jagged-edged rock.

> At the time he heard the object hit the gate, he was stunned. He was still confused as to what was going on as he redirected his attention to see where the object was coming from. He then saw the defendant advancing towards him through the traffic lanes, and his confusion turned to feeling threatened and scared of the situation that was going on. He stated he was not too sure what would happen next. Officer Lopez considered the matter to be a serious event.

> On cross-examination, Lopez testified that he was not worried about being hurt because he was not aware he was being attacked. He did not necessarily fear any immediate bodily harm, but was confused at the time he heard the rock. He testified that he

on another which causes a reasonable apprehension of immediate bodily harm." 9th Cir. Model Crim. Jury Instr. 8.4 (2010) (emphasis added).

The current pattern jury instructions do not, however, specify what level of criminal intent the government must prove when an individual "makes a threat coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm." As we explain further in Part III.A.2, the requisite criminal intent under this theory of assault is the intent to assault. *See United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009); *United States v. Kartman*, 417 F.2d 893, 895 (9th Cir. 1969).

became scared afterwards, after turning his attention towards the defendant.

Based on these findings, the court concluded, first, that the government did not need to prove that Officer Lopez subjectively feared immediate bodily harm due to the rock throwing because Section 111 requires a different level of proof than that of Section 113, the general federal assault statute. The district court then determined that "the events of hearing the rock hit the gate behind [Officer Lopez] . . . watching it fall behind him and turning to see the defendant advancing on him created a display of force reasonably causing a person to fear immediate bodily harm." In the alternative, the district court determined that these events actually "caused the victim to sense the fear and harm." By emphasizing that "the events occurred within . . . fluid and seamless seconds," the court rejected Acosta-Sierra's claim that Officer Lopez's "feelings of being threatened and scared" occurred after the rock hit the gate. The court ultimately decided that the close proximity of events sufficed "to create th[e] fear that satisfies the element of 111."

We conclude that the district court erred in its application of the "reasonable apprehension of harm" prong of common law assault. However, because the evidence would have been sufficient to convict Acosta-Sierra of attempted battery if the district court had not relied on the erroneous model jury instruction then in effect, we remand for retrial under the proper standard. *See United States v. Cote*, 51 F.3d 178, 182-83 (9th Cir. 1995) (holding that the Double Jeopardy Clause does not bar retrial when a conviction is reversed for trial error such as an incorrect jury instruction, but the evidence is not insufficient to sustain a conviction under the proper standard).

### 1.    Reasonable Apprehension of Immediate Bodily Harm

**[2]** We first consider whether Acosta-Sierra's rock throwing constituted assault because it was "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Chapman*, 528 F.3d at 1219-20 (quoting *Dupree*, 544 F.2d at 1051). We agree with the district court that, for purposes of Section 111, a victim's apprehension of immediate bodily injury must be determined by an objective standard of reasonableness. Therefore, to prove criminal assault under the "reasonable apprehension of harm" prong, the evidence must permit an inference that a reasonable person "standing in the official's shoes," that is, observing what the official observed, would have apprehended imminent bodily injury. *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987); *see also id.* at 989 (describing the reasonable apprehension requirement as an "objective standard").[4]

Acosta-Sierra argues that, to be convicted of assault, the government must prove beyond a reasonable doubt that Officer Lopez also subjectively feared immediate bodily harm. In so doing, Acosta-Sierra relies on *United States v. Skeet*, for the proposition that "fear on the part of the victim" is a necessary element of assault. 665 F.2d 983, 986, 987 (9th Cir. 1982). We disagree. Skeet involved an assault conviction under 18 U.S.C. § 113, the general federal assault statute, and, therefore, the court did not consider the enhanced protections

---

[4]Contrary to the government's argument, we have not previously adopted an objective standard of reasonable apprehension of harm. Although, in *United States v. Jim*, we stated that, if Section 111 were a general intent crime, the "only issue would be whether a reasonable man would find that the defendant's actions should have put a federal officer in apprehension of bodily harm," 865 F.2d 211, 213 (9th Cir. 1989), this was mere dicta. Our holding in Jim was limited to resolving whether Section 111 is a general or specific intent crime. *Id.* at 215.

we have afforded federal officials under Section 111. *See Jim*, 865 F.2d at 213-15 (contrasting our construction of federal forcible assault pursuant to Section 111 with the assault prohibited under Section 113 in light of Congress's intent, in passing Section 111, " 'to protect *both* federal officers and federal functions' " (quoting *United States v. Feola*, 420 U.S. 671, 679 (1975))). Moreover, even when construing assault in contexts outside of Section 111, we have required that fear of personal harm be reasonable. *See Price*, 156 F. at 953 ("We have a right to live in society without being put in fear of personal harm. But it must be a *reasonable* fear of which we complain.") (internal quotation marks and citation omitted) (emphasis added); *see also* Restatement (Second) of Torts § 24 (1965) (explaining that "[t]he apprehension which is sufficient to make the actor liable [for assault] may have no relation to fear" and that "the heavyweight champion pugilist of the world" may be put in the requisite apprehension by "a scrawny individual who is intoxicated" even if the former is "not at all afraid of the latter").

An objective standard strikes a balance between protecting federal officials and their functions while also giving effect to the common law theories underlying criminal assault. An objective standard guards against liability for subjective but unreasonable apprehension of imminent bodily harm, and, at the same time, allows prosecution for assault when a reasonable person in the federal official's shoes would fear immediate injury, but the official happens to be particularly stoic or confident in his ability to resist an attack.

In this case, however, the district court found reasonable apprehension based on information beyond what someone in Officer Lopez's shoes would know, explaining that it was "not impressed with the position that the victim needs to see the rock hurling in his direction or observ[e] a near miss and be[ ] fearful instantaneously." In so doing, the district court applied an overly-broad construction of the reasonableness

standard and conflated the two concepts of common law assault.

As noted previously, when an individual is charged with assault as an attempted battery, the victim's apprehension of imminent harm is inconsequential. *See, e.g.*, *Skeet*, 665 F.2d at 987 (noting that fear on the part of the victim is not an essential element of the assault charge which involved battery based on a gunshot wound); *Bell*, 505 F.2d at 541 (noting that when "an attempted battery is an assault, it is irrelevant that the victim is incapable of forming a reasonable apprehension"); LaFave, 2 Substantive Criminal Law § 16.3(a), at 567 (stating that an attempted battery "may be committed though the victim is unaware of his danger, *as where A throws a rock at, but misses, B who is asleep*, or where *A* shoots from the south at *B* who is facing north") (emphasis added).

**[3]** In contrast, for a criminal assault based on causing the apprehension of imminent bodily injury, the common law requires awareness of the threat. *See generally LaFave*, 2 Substantive Criminal Law § 16.3(b), at 569 ("It is not enough, of course, to intend to scare the other without succeeding; if the other fails to notice the threatened battery, the threatener, not having succeeded in his plan, cannot be held guilty of assault."); Prosser & Keeton, Torts § 10 at 44 ("Since the interest involved is the mental one of apprehension of contact, it should follow that the plaintiff must be aware of the threat of contact, and that it is not an assault to aim a gun at one who is unaware of it."); Restatement (Second) of Torts § 26, Comment a (1965) ("The gist of the liability is the other's knowledge that the actor is attempting to commit a battery upon him."); *see, e.g.*, *State v. Barry*, 124 P. 775, 777 (Mont. 1912) (finding no assault where the defendant leveled a rifle at a prosecutor who did not see the defendant until after the defendant had been rendered harmless, because "it would seem impossible for any reasonable man in [the prosecutor's] position to affirm that he was then in fear for his safety").

**[4]** Thus, contrary to the district court's conclusion, an objective reasonable person standard does not consider the reasonable person who is aware of all the relevant circumstances. Rather, it considers the reasonable person who observes what the official observes. The paradigmatic example of a defendant brandishing an unloaded gun illustrates why the district court's standard does not best protect federal officials in the performance of their functions. We have held that "if within shooting distance one menacingly points at another with a gun, apparently loaded, not loaded in fact, he commits an assault the same as if it were loaded." *Price*, 156 F. at 953 (internal quotation marks and citation omitted). At the time the individual brandishes the weapon, it is reasonable for a person in the victim's shoes to apprehend immediate bodily harm. *Id.* We do not presume knowledge, however, beyond what one can observe when standing in the victim's shoes. Officers must be empowered to respond to apparent threats of violence without first being required to learn or confirm all the relevant facts in an altercation, such as whether a gun is in fact unloaded. To apply too high a standard of apprehension may, in certain circumstances, undermine protections for federal officials.

**[5]** The district court erred in concluding that Acosta-Sierra caused a reasonable apprehension of immediate bodily harm under an objective standard of reasonableness because the district court did not limit its consideration to the facts known to Officer Lopez. Officer Lopez did not see Acosta-Sierra before he threw the rock and did not realize what had happened until after the threat of imminent bodily harm had passed. A reasonable person observing what Officer Lopez observed, therefore, would not have been aware of any threat. The district court erred in adopting an objective standard that assumed knowledge beyond what one would reasonably apprehend in Officer Lopez's position.

The district court's alternative holding that Officer Lopez's subjective feeling of fear *after* the rock hit the gate and landed

constituted the requisite apprehension of immediate bodily harm was also in error. The district court found that, at the time Officer Lopez heard the rock hit the gate behind him, "he shrugged, was stunned, and was confused by the events," and it was not until "he turned and saw the defendant advancing towards him" that "his confusion turned to feeling threatened and being scared." The district court concluded that these facts were sufficient to demonstrate an expectation of immediate bodily harm because of the "close proximity of time" between "the bang [Officer Lopez] heard towards his back" and his feeling of fear.

[6] In reaching this conclusion, the district court failed to recognize that the apprehension the officer must feel is apprehension of immediate *bodily harm*, not apprehension based on past conduct. *See Sheehan v. United States*, 896 F.2d 1168, 1171 n.4 (9th Cir. 1990) (noting that, to trigger liability for assault in torts, "a specific apprehension of imminent battery is required" and therefore "apprehension of some other harm" will not suffice); *cf. United States v. Jacobs*, 632 F.2d 695, 696-97 (7th Cir. 1980) (finding that a victim could not be placed in apprehension of immediate bodily harm if he did not see his assailant before being shot, and holding that events immediately thereafter, including seeing defendant's gun pointed at the victim, constituted a separate assault based on placing the victim in fear of a second gun shot); *see generally* Webster's Third New Int'l Dictionary, 1130, 1132 (unabridged ed. 1993) (defining "imminent" as "ready to take place: near at hand: impending" and defining "impend" as "to threaten from near at hand or as in the immediate future").[5]

---

[5]The justification for requiring that assault be based on a threat of immediate bodily injury relates to common law theories of self-defense. If an individual believes an attack is imminent, resorting to defensive action is justified. *See Price*, 156 F. at 953; *see generally Sheehan*, 896 F.2d at 1171 n.4 (noting that, historically, "[a] cause of action for assault [in torts] was provided to preserve the 'king's peace' by punishing conduct likely to inspire retaliation by one who perceives himself threatened by imminent battery"). In contrast, if the threatening conduct is completed prior to the victim realizing what has transpired, the threat of bodily harm has ceased and defensive action is not necessary, and therefore unjustified, to avoid danger.

Here, the district court never found that Acosta-Sierra's rock-throwing conduct caused Officer Lopez to fear *imminent* bodily harm. In fact, the district court specifically found that Officer Lopez "was not in fear when he heard the bang of the object." Although Officer Lopez stated that he started to feel "threatened and scared of the situation that was going on" soon after seeing the rock fall to the ground, this general feeling of fear or unease is not the same as apprehension of an imminent battery due to Acosta-Sierra's throwing of the rock. *See Sheehan*, 896 F.2d at 1171 n.4. Nor is there any evidence that Officer Lopez feared that Acosta-Sierra would attack him again. When Officer Lopez turned to observe Acosta-Sierra "advancing on him," Acosta-Sierra was still six to seven car lengths away and did not appear to be carrying any rocks or other weapons in his hands. He therefore did not have an "apparent present ability" to immediately cause bodily harm to Officer Lopez. *Chapman*, 528 F.3d at 1219-20.[6]

[7] Because Officer Lopez did not become aware of the threat until after it had dissipated, a reasonable person in his position would not have apprehended immediate bodily injury. *Cf. United States v. Havelock*, 664 F.3d 1284, 1304 (9th Cir. 2012) (Reinhardt, J., concurring) (noting, in the context of threatening communications, that "[a] threat can refer only to a future, not a past, act"). Accordingly, the district court erred in concluding that Acosta-Sierra's rock-throwing conduct constituted assault under the "reasonable apprehension of harm" prong of common law assault.

## 2. Criminal Intent

[8] In finding Acosta-Sierra guilty of assault under the

---

[6]Because we conclude that a reasonable official in Officer Lopez's position would not have feared immediate bodily harm based on Acosta-Sierra's post-rock throwing conduct, it is unnecessary to address Acosta-Sierra's argument that the district court's reliance on such conduct created a prejudicial variance.

"reasonable apprehension of harm" prong, the district court also erred by holding that the government "need not . . . prove[ ]" that Acosta-Sierra intentionally used force against Officer Lopez, and thereby reading criminal intent out of Section 111 completely. To sustain a conviction for a violation of Section 111, however, we "require[ ] intent to assault." *Juvenile Female*, 566 F.3d at 947.

**[9]** Although the standard for mental culpability under Section 111 has been a source of confusion and debate within and beyond our Circuit, *see*, *e.g.*, *Jim*, 865 F.2d at 213, we have long held that mens rea, "the evil purpose or mental culpability which was the essential mental component of common-law assault and battery," is an essential element of forcible assault under Section 111. *Kartman*, 417 F.2d at 895; *see also Feola*, 420 U.S. at 685 (holding that a defendant need not know that his victim is a federal officer to be held liable under Section 111, so long as "he nonetheless knows from the very outset that his planned course of conduct is wrongful").

**[10]** By finding Acosta-Sierra guilty of felony assault without finding facts sufficient to justify that Acosta-Sierra "knowingly and intentionally and forcibly" assaulted Officer Lopez, as charged in the indictment, the district court essentially turned this crime into a strict liability offense. However, "[f]orcible assault [pursuant to Section 111] clearly does not come within the class of 'public welfare offenses' which the legislature might wish to punish regardless of the actor's intent." *Kartman*, 417 F.2d at 895 n.4 (citations omitted). The district court erred in holding that assault under the "reasonable apprehension of harm" prong did not require a finding that Acosta-Sierra intentionally used force against Officer Lopez.

### 3.   Rule 29 Motion

**[11]** Acosta-Sierra also claims that the district court erred in denying his Rule 29 motion for a judgment of acquittal

based on insufficiency of the evidence. Although we reverse his conviction on Count 2 because the district court applied an incorrect standard of law, we must address the sufficiency of the evidence supporting it, because if the evidence were insufficient, retrial would be barred by the Double Jeopardy Clause. *See United States v. Recio*, 371 F.3d 1093, 1106 (9th Cir. 2004). On the other hand, the Double Jeopardy Clause "does not prevent the government from retrying a defendant who succeeds in getting his conviction set aside . . . because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988). We disagree with Acosta-Sierra that there was insufficient evidence to support his conviction for assault under Count 2.

Count 2 of the indictment charged Acosta-Sierra with "knowingly and intentionally and forcibly assault[ing]" Officer Lopez by "throw[ing] baseball size rocks at Agent Lopez while he was engaged in the performance of his official duties" and using "dangerous and deadly weapons, to wit, rocks" in committing the offense. The indictment did not, therefore, distinguish between the two types of common law assault. As discussed, the district court erred in holding that Acosta-Sierra's rock-throwing constituted assault under the "reasonable apprehension of harm" prong of common law assault because the district court applied an overly-broad standard of objective reasonableness, overlooked the requirement that Officer Lopez fear immediate bodily injury, and failed to find that Acosta-Sierra acted with the requisite criminal intent.

Nonetheless, we find that there was sufficient evidence to convict Acosta-Sierra of assault in violation of Section 111(a) and (b) under the attempted battery prong. The government presented evidence that Acosta-Sierra hurled "with all of his might" a baseball-size rock toward Officer Lopez, "missing him by one to two feet at a point closest to Lopez's head." Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find based on circumstan-

tial evidence that Acosta-Sierra saw Agent Lopez crossing between the empty passenger lanes and deliberately threw the rock at him. *See United States v. Sommerstedt*, 752 F.2d 1494, 1496 (9th Cir. 1985); *cf. Feola*, 420 U.S. at 684-86; *see generally United States v. Beltran-Garcia*, 179 F.3d 1200, 1205 n.4 (9th Cir. 1999) (recognizing that it is permissible for a fact finder to infer that a person intends the natural and probable consequences of acts done knowingly). Our cases make clear that it is irrelevant under the attempted battery prong that the rock did not strike Officer Lopez, *see Chapman*, 528 F.3d at 1219, and that Officer Lopez did not apprehend immediate bodily harm, *see Lewellyn*, 481 F.3d at 697; *Skeet*, 665 F.2d at 987. Acosta-Sierra concedes that Officer Lopez was engaged in the performance of his official duties at the time of the incident, *see* 18 U.S.C. § 111(a)(1), and does not challenge the district court's holding that the rock constituted a deadly or dangerous weapon, *see* 18 U.S.C. § 111(b).

**[12]** Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Acosta-Sierra made a willful attempt to inflict injury upon Officer Lopez, *see Chapman*, 528 F.3d at 1219-20, and that he did so with the requisite "intent to assault," *Juvenile Female*, 566 F.3d at 947. Because the Double Jeopardy Clause does not bar retrial in these circumstances, *see Cote*, 51 F.3d at 182-83, we remand for further proceedings consistent with this opinion.

## B.   Count 3

### 1.   Evidence of Diminished Capacity

Acosta-Sierra contends that the district court erred when it held that Section 111 is a general intent crime and, as a result, impermissibly precluded Acosta-Sierra's diminished capacity defense. *See United States v. Twine*, 853 F.2d 676, 679 (9th Cir. 1988) (holding that "diminished capacity, like voluntary

intoxication, generally is only a defense when specific intent is at issue").

**[13]** Acosta-Sierra's argument is foreclosed by *United States v. Jim*, where we held that assault under Section 111 is a general intent crime. 865 F.2d at 215. The defendant in *Jim* was charged with three counts of assault on a federal officer with a deadly weapon following an extended car chase in which the defendant fired four gun shots at police officers. *Id.* at 212. In determining whether the trial court erred in precluding the defendant from instructing the jury on the defense of voluntary intoxication, we analyzed Section 111 based on the elements of the statute and its purpose. First, we noted that Section 111 appears to be a specific intent crime because the common law definition of assault requires proving "willfulness." *Id.* at 213 (citing *United States v. Drew*, 722 F.2d 551, 553 (9th Cir. 1983), for the proposition that "the element of wilfulness renders an offense a specific intent crime"). We then considered the statute in light of Congress's purpose, and concluded that applying a general intent test would better serve the congressional purpose of "protect[ing] federal officers in the exercise of their official duties." *Id.* at 215.

Acosta-Sierra concedes that *Jim* deemed assault on a federal officer to be a general intent offense, but argues that our decision in *United States v. Chapman* undermined the legal analysis in *Jim* and, in so doing, changed the mens rea landscape for Section 111 offenses. In *Chapman*, we did not address criminal intent at all. *Chapman*, 528 F.3d 1215. However, we did consider the plain language of the statute, and determined that, by using the term "simple assault" in Section 111(a), "Congress strongly suggested that an assault was required for a Section 111 conviction." *Id.* at 1221; *but see Jim*, 865 F.2d at 214 (relying, in part, on the fact that Section 111 prohibits "resisting, impeding, intimidating, and interfering with a federal officer," in addition to prohibiting assault, to conclude that, "Congress intended to prevent interference with federal functions, *not just assault* on federal officers.")

(emphasis added). By construing Section 111 based only on the plain language of the statute, Acosta-Sierra contends that we implicitly rejected the congressional purpose analysis in *Jim* and only *Jim*'s analysis based on the elements of the offense remains intact. Consequently, Acosta-Sierra argues that Section 111 must now be construed to require a showing of specific intent. We disagree.

**[14]** Although our decision in *Chapman* clarified the type of conduct prohibited by Section 111, it did not make Section 111's congressional purpose wholly irrelevant to resolving other ambiguities in this "inartfully drafted" statute, *Chapman*, 528 F.3d at 1218, such as the requisite level of mens rea. In resolving the complicated question of whether Section 111 requires proving specific or general intent, the majority of *Jim*'s congressional purpose analysis was based on the Supreme Court's decision in *United States v. Feola*, which noted that, in passing Section 111, "Congress intended to protect both federal officers and federal functions." *Jim*, 865 F.2d at 214 (quoting *Feola*, 420 U.S. at 679) (internal quotation marks omitted). Because *Jim* is amply supported by the Supreme Court's reasoning in *Feola*, it has not been effectively overruled by *Chapman*.

Therefore, we do not find that our decisions in *Chapman* and *Jim* are clearly irreconcilable. *See Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc) (holding that only when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [should a three-judge panel] consider itself bound by the later and controlling authority, and . . . reject the prior circuit opinion as having been effectively overruled.").

**[15]** Because we are bound by our prior holding in *Jim*, the district court did not err in precluding Acosta-Sierra from introducing evidence as part of a diminished capacity defense. *See also Vela*, 624 F.3d at 1156 (holding, post-*Chapman*, that

Section 111 is a general intent crime to which diminished capacity is not a permissible defense).

## 2. Evidence of Self-Defense Theory

Finally, Acosta-Sierra argues that the district court erred when it excluded his mental health evidence in support of a self-defense theory on Count 3. We disagree.

**[16]** For purposes of Section 111, we have recognized that an individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force in a narrow range of circumstances. *See United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992); *see also id.* at 580 (noting that an individual has a limited right to offer reasonable resistance to arrest that is triggered by the officer's bad faith or provocative conduct). To do so, however, a defendant must offer evidence to show: "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." *United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011) (quoting *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006)). Moreover, an individual who is the attacker cannot make out a claim of self-defense as a justification for an assault. *Id.*

Here, Acosta-Sierra sought to introduce evidence through expert testimony that, due to a psychotic breakdown related to his schizophrenia, he honestly believed that jail officials, marshals, and others were trying to poison his food and kill him at the time of the assault on Officer Burrola.

In support of this position, Acosta-Sierra relies on *United States v. Sanchez-Lima*, 161 F.3d 545 (9th Cir. 1998), to argue that mental health evidence is relevant and admissible if it demonstrates why a defendant "reasonably believed" force was about to be used on him. In *Sanchez-Lima*, the

defendant submitted evidence that, following an attack by a border patrol agent who Sanchez-Lima did not realize was a federal official, another border patrol agent jumped out at Sanchez-Lima from behind some shrubbery, in the dark, without identifying himself. *Id.* at 547, 549. On this basis, "a rational jury could conclude that Sanchez-Lima reasonably believed that he was about to receive another beating." *Id.* At 549.

In contrast, the district court refused to allow Acosta-Sierra to admit mental health evidence on his self-defense theory because no objectively reasonable person in Acosta-Sierra's position would believe self-defense to be necessary to prevent an imminent attack from Officer Burrola. As noted by the district court, when Officer Burrola approached Acosta-Sierra to handcuff him and escort him to court, there was no use of force, let alone any excessive force, from which one might reasonably suggest that a cognizable theory of self-defense would lie. In fact, the evidence demonstrated that Acosta-Sierra was the attacker.

**[17]** While mental health evidence would have explained why Acosta-Sierra subjectively believed that self-defense was necessary under the circumstances, it would not have supported the proposition that his actions were objectively reasonable. *See*, *e.g.*, *People v. Goetz*, 68 N.Y.2d 96, 112 (1986) (holding that the "he reasonably believes" language in self-defense statute "retains an objective element" and thus the court below erred in saying it merely required the defendant's belief to be "reasonable to him").

This objective standard is particularly important in the penological context due to "the delicate situation faced by correctional officers, who are required to make snap judgments regarding the 'very real threats [that] unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.' "

*United States v. Gore*, 592 F.3d 489, 490, 493 (4th Cir. 2010) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

**[18]** Therefore, the district court did not abuse its discretion in refusing to admit mental health evidence in support of Acosta-Sierra's theory of self-defense.

## IV. CONCLUSION

The judgment of conviction on Count 2 is reversed, and the judgment of conviction on Count 3 is affirmed. We remand for further proceedings consistent with this opinion.

**REVERSED in part, AFFIRMED in part, REMANDED.**