**UNITED STATES of America, Appellee,**

v.

**Dorotha RHONE, Appellant.**

No. 88–3028.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 1988.

Decided Jan. 6, 1989.

Thomas K. Clancy, Washington, D.C., for appellant.

Jody Goodman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and

Michael W. Farrell, Helen M. Bollwerk, Washington, D.C., and Blanch L. Bruce, Asst. U.S. Attys., appeared on the brief, for appellee.

Before MIKVA, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Dorotha Rhone challenges her convictions for mail fraud and theft on the ground that the district court gave an erroneous jury instruction on ignorance of the law as an excuse. We conclude that the instruction at issue was constitutional error and that the error was not harmless beyond a reasonable doubt, *see Rose v. Clark*, 478 U.S. 570, 582, 106 S.Ct. 3101, 3108–09, 92 L.Ed.2d 460 (1986); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We therefore reverse appellant's convictions and remand for a new trial.

## I.

Appellant was indicted and arraigned on one count of mail fraud, 18 U.S.C. §§ 1341, 1342, eight felony counts of theft, D.C. Code §§ 22–3811, –3812(a), and two misdemeanor counts of theft, D.C.Code §§ 22–3811, –3812(b). The indictment arose from an alleged scheme to defraud the District of Columbia Department of Employment Services ("DES") by unlawfully claiming unemployment benefits while working full-time. After a two-day jury trial beginning on December 17, 1987, during which one felony count of theft was dismissed, appellant was convicted on all remaining counts.

At trial, the prosecution's theory was that appellant had knowingly committed theft of employment benefits and fraudulently used the mails to perpetrate that theft. Appellant's sole defense was that she did not have the requisite criminal intent.

The prosecution presented two witnesses. Tracey Sibert, director of security of International Total Services ("ITS"), testified that appellant worked for ITS as a contract security guard at various government buildings, starting as a part-time employee (working 16 hours a week) in April or May 1984, and later as a full-time employee (working about 40 hours a week) beginning in June or July 1984. Sibert testified that in November or December 1984, ITS assigned appellant to a "fixed post" at 1121 Vermont Avenue, N.W., with responsibility for monitoring the floor and the personnel entering and exiting the building. Sibert concluded by stating, based on ITS' timesheets, that from September 30, 1984 to February 9, 1985, appellant worked 40–hour work weeks and was paid a total of $3,060.

Austina Dailey, supervisor of the benefits payment and control branch of the District of Columbia DES, then testified that unemployed or partially employed workers who are willing and able to work and who are actively seeking employment are eligible to receive unemployment compensation, but that persons working full-time are not so eligible. Dailey stated that appellant's initial claim application indicated that appellant applied for unemployment compensation from the DES on July 30, 1984, and that she had left her last employer, Rainey Security Co., on June 1, 1984 due to lack of work. Dailey also stated that DES notified appellant on August 1, 1984 that, based upon her prior earnings, she was entitled to $170 per week in unemployment benefits. Dailey further testified that, to claim each bi-weekly check, appellant was required to complete and mail a form to DES indicating that she had not been working during the two weeks in question. The parties then stipulated that, from October 9, 1984 to February 11, 1985, DES paid appellant a total of $3,060 in unemployment benefits.

On cross-examination, Dailey reiterated that persons working full-time are not eligible for unemployment compensation. She defined "full-time" employment as a job requiring a 40–hour work week. The ITS timesheets, the initial claim application, the DES monetary determination, and the relevant claim forms and checks were admitted into evidence at trial.

The defense's evidence consisted solely of appellant's testimony. Appellant testified that she worked full-time for Rainey Security Company from about April 1983 to June 1984, and that she began working part-time (about 16 hours a week) for ITS in June or July 1984. She acknowledged applying for and receiving unemployment benefits from October 1984 to February 1985, but stated that she was told she was eligible for the benefits because she was employed part-time. Appellant testified that she did not intend to defraud the District of Columbia.

On cross-examination, appellant admitted that from September 1984 to February 1985, she worked an average of 40 hours a week for ITS, but asserted that she did not consider it to be full-time work because her hours were not guaranteed. She also admitted that she knew she was supposed to report any change of work status to DES, but that she did not do so even though she was working an average of 40 hours a week. She further stated that while she was working for ITS, she received regular, overtime, and holiday pay, and she acknowledged receiving the unemployment benefit claim forms by mail, completing and signing the claim forms, returning them by mail, and cashing the benefit checks. She further conceded that, during the time she was averaging 40 hours a week with ITS, she had indicated on each biweekly claim form that she was available and actively seeking work and that she was not working during the time claimed.

On re-direct examination, appellant testified that, when she was averaging 40 hours a week, her hours were irregular, i.e., her 40-hour work weeks were often the result of working 24 hours at a time, weekends, and as a substitute employee. Appellant reiterated that, at the time she applied for and received the benefits, her understanding was that she was eligible for the benefits because she was working only part-time.

At issue on appeal is the district court's instruction to the jury on ignorance of the law as an excuse. After instructing the jury on the elements of theft and mail fraud, the court instructed the jury on intent as follows:

> Now the mail fraud statute is what we call a specific-intent statute. The government must prove specific intent on the part of the defendant beyond a reasonable doubt. And that leads me to defendant's theory of the case. As [defense counsel] argued to you, in order for there to be a crime, there must be not only the act, but also the specific intent to defraud the government.
>
> Now what do we mean by "intent"? Intent means that a person had a purpose to do a thing. It means that the thing was done consciously and voluntarily and not inadvertently, or accidentally. Some criminal offenses require only a general intent. Where this is so and it is shown that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the mere doing of the act. Other offenses, such as mail fraud, require a specific intent. Specific intent requires more than a mere general intent to engage in certain conduct and to do certain acts.
>
> A person who knowingly does an act which the law forbids, intending with bad purpose, either to disobey or disregard the law, may be found to act with specific intent. *And I should point out at this time that ignorance of the law is no excuse.*

Trial Transcript at 107–08 (emphasis added). Except for the last sentence, this instruction is based on the standard jury instruction on intent for the District of Columbia. *See* District of Columbia Bar Association, Criminal Jury Instructions, No. 3.01, at 115 (3d ed. 1978) ("Redbook"). Defense counsel objected to the instruction on ignorance of the law, but the court summarily overruled the objection. The court, at defense counsel's request, later added that the crime of theft is also a specific intent crime.

The jury found appellant guilty of all counts before it. On February 17, 1988, the court suspended imposition of sentence, placed appellant on three years probation,

and ordered her to pay $3,060 in restitution. This appeal followed.

## II.

Appellant claims that the district court's instruction that "ignorance of the law is no excuse" constitutes reversible error. We pause first to consider whether the instruction was erroneous before reaching the more difficult question of whether the error requires reversal of appellant's convictions and a new trial.

### A. *The Instruction at Issue*

■ The prosecution, noting in its brief that the instruction was "perhaps ill-advised" and may have been "overstated," virtually concedes that the district court's instruction was erroneous. The prosecution does not dispute that although ignorance of the law is generally not a defense, there are important exceptions. *See, e.g., Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (conviction under statute prohibiting food stamp fraud requires proof that the accused knew his use was unauthorized); *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (conviction for failing to register as a felon requires proof of knowledge of obligation to register); *cf. United States v. Holland,* 810 F.2d 1215, 1222–23 (D.C.Cir.) (ignorance of the law may be an excuse where legislation criminalizes "wholly passive" conduct by a person who is "unaware of any wrongdoing"), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987).

The prosecution instead attempts to salvage the instruction by arguing that, in cases where ignorance of the law is a valid defense, the defendant's ignorance must be objectively reasonable, *see, e.g., United States v. Barker,* 546 F.2d 940, 946–54 (D.C.Cir.1976) (objectively reasonable reliance on a government official's authority may excuse criminal liability); *accord United States v. DeCastris,* 798 F.2d 261, 263–64 (7th Cir.1986), and that appellant in this case failed to act in good faith because she knew she was required to report to DES any change in her hours and earnings.

Whatever the merits of this argument, however, we need not decide whether appellant acted in objective good faith, because counsel did not pursue the argument at trial and the district court did not instruct the jury on it. We note in passing, however, that the proposed standard is inapposite anyway. The government's burden is to prove the requisite *mens rea* of the offense charged; if appellant did not harbor the necessary criminal intent, then she is not guilty regardless of whether her mistaken understanding of the law was objectively reasonable.

For all of the above reasons, we conclude that the district court's instruction on ignorance of the law was erroneous.

### B. *Harmless Error*

■ The remaining issue is therefore whether the error was sufficiently harmful to require reversal and a new trial. In general, "[t]he standard for determining when an error in a jury instruction requires reversal is the general standard for determining harmless error after objection by the defense." *United States v. Lemire,* 720 F.2d 1327, 1339 n. 16 (D.C.Cir.1983) (citations omitted), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). If, in light of all the circumstances—the language of the instructions, the arguments of counsel, and the evidence itself— it is "highly improbable" that the jury convicted on an improper theory, then "technical errors in the instructions are deemed harmless, and we will affirm." *Id.* at 1339. If, on the other hand, these factors indicate a "substantial possibility" that the jury convicted on an improper legal theory, then reversal is required. *Id.* at 1343.

Appellant argues, however, that the district court's instruction impermissibly shifted the prosecution's burden of proof of intent and that therefore the standard for reviewing constitutional error—harmless error beyond a reasonable doubt—applies. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Scott,* 529 F.2d 338, 340– 41 (D.C.Cir.1975) (erroneous allocation of burden of proof is constitutional error).

We agree with appellant that the proper standard of review in this case is the *Chapman* test. As the district court emphasized, mail fraud and theft are specific intent crimes, the prosecution was required to prove specific intent beyond a reasonable doubt, and appellant's entire defense was that she lacked specific intent to defraud the government. The court's instruction on ignorance of the law, however, suggested to the jury that appellant could be convicted despite her lack of specific intent, because a jury could reasonably conclude that even if appellant honestly but erroneously believed that she was eligible for the benefits, her erroneous belief, or "ignorance of the law," was irrelevant to her guilt or innocence. *See Rose v. Clark*, 478 U.S. 570, 583, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986) (harmless error standard of *Chapman* applies to jury instructions that impermissibly shift the burden of proof); *see also United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir.1986) ("Establishing an element of an offense concerning a requisite state of mind by a presumption [that everyone knows the law] relieves the prosecution of its burden of proof, contrary to the requirements of due process.") (citing *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979)); 1 L. Sand, J. Siffert, W. Loughlin & S. Weiss, *Modern Federal Jury Instructions* ¶ 8.05 (Supp.1988) (separate instruction on ignorance of the law risks shifting the burden to the defendant to rebut the corollary that everyone is presumed to know the law). In light of the constitutional implications raised by the disputed jury instruction, we conclude that the *Chapman* test is the proper standard of review in this case.

■ The crucial issue is therefore whether the district court's instruction on ignorance of the law was harmless beyond a reasonable doubt. As the Supreme Court has noted, not every constitutional error requires automatic reversal. *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827. Rather "[t]he question is whether, 'on the whole record ... the error ... [is] harmless beyond a reasonable doubt.'" *Rose v. Clark*, 478 U.S. at 583, 106 S.Ct. at 3109 (citation omitted); *see also Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (1987) ("we see no reason to require a retrial if it can be said beyond a reasonable doubt that the jury's verdict in this case was not affected by the erroneous instruction").

The prosecution argues that because appellant admitted that she knew she was required to report changes in work status and that she nevertheless claimed benefits while working 40 hours a week, a jury could reasonably find the predicate facts that conclusively establish intent. The erroneous instruction would then have been viewed by the jury as mere surplusage, because to the extent that the focus of the trial was appellant's intent, i.e., whether appellant *knowingly* committed fraud and theft by receiving benefits even though she was working, the jury may not have been concerned with whether appellant was "ignorant" of the law. Indeed, as the prosecution notes, the trial judge expressly instructed the jury, two paragraphs before the instruction at issue, not only that "[t]he government must prove specific intent on the part of the defendant beyond a reasonable doubt," but also that the defense's theory of the case was that appellant lacked specific intent.

This argument is not without considerable merit, but we hold that it fails to meet the strictures of the *Chapman* standard. Although we agree with the premise of the prosecution's argument, that there was ample evidence from which the jury could reasonably have inferred specific intent, we disagree with its conclusion that we can therefore say beyond a reasonable doubt that the erroneous instruction nevertheless did not affect the jury's verdict.

Instead, we find it plausible, if not equally likely, that the jury reasoned that, contrary to the prosecution's theory, if an element of an offense is that one must knowingly do an act which the law forbids, and if ignorance of the law is no excuse, then appellant is guilty regardless of whether she knew she was violating the law. In other words, the jury could reasonably have decided that even if appellant did not

know that her conduct constituted fraud, she could still be found guilty because "ignorance of the law is no excuse." The jury in this case could well have inferred that the prosecution had met its burden of proving specific intent beyond a reasonable doubt simply on the basis that appellant was presumed to know the law and that she therefore knowingly committed fraud and theft. At the very least, the instruction confused the jury on the very central issue of intent.

Accordingly, we cannot say, *beyond a reasonable doubt,* that the jury was not swayed by the erroneous instruction in reaching its verdict. Specific intent is an essential element of mail fraud and theft, and appellant's sole defense at trial was that she did not intend to defraud the District of Columbia government. "An instruction central to the determination of guilt or innocence may be fatally tainted by even a minor variation which tends to create ambiguity. * * * 'A conviction ought not to rest on an equivocal direction to the jury on a basic issue.'" *United States v. Alston,* 551 F.2d 315, 321 (D.C.Cir.1976) (citations omitted).

Moreover, under the circumstances of this case, the fact that the flawed instruction was one sentence at the end of an otherwise flawless and unambiguous jury instruction reinforces, rather than weakens, our conclusion. Because the district court emphasized the instruction at issue by delivering it in the form of an afterthought at the end of a lengthy reading from the "Redbook" jury instruction on intent, and because appellant's denial of specific intent was her only defense at trial, we find it likely that the jury was sufficiently conscious of the instruction to have given it greater weight than a cold reading of the record might suggest. *See* Frankel, *The Search for Truth: An Umpireal View,* 123 U.Pa.L.Rev. 1031, 1043 (1975) ("The jury is likely to discern hints, a point of view, a suggested direction, even if none is intended and quite without regard to the judge's efforts to modulate and minimize his role."); Note, *The Appearance of Justice: Judges' Verbal and Nonverbal Behavior in Criminal Jury Trials,* 38 Stan. L.Rev. 89, 106–12 (1985) (empirical evidence that judges' verbal and nonverbal cues, e.g., changes in tone of voice, may influence jury verdicts). Similarly, the fact that the instruction at issue is a phrase as well-known in the popular culture as "ignorance of the law is no excuse" supports our view of the possibility that the jury carried it into the jury room and relied on it to the prejudice of appellant.

Applying the *Chapman* harmless error standard, we therefore conclude, in light of the record as a whole, that the district court's erroneous instruction was sufficiently harmful to warrant reversal of appellant's convictions. Because we so hold, we need not consider appellant's other arguments for reversal.

### III.

The district court's instruction to the jury on ignorance of the law was constitutional error. Because we cannot say beyond a reasonable doubt that the jury's verdict was not affected by the erroneous instruction, *see Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (1987); *Rose v. Clark,* 478 U.S. 570, 583, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), we reverse appellant's convictions and remand for a new trial.

*It is so ordered.*