In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-1756

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOSHUA A. WALDMAN,

*Defendant-Appellant*.

---

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:13-cr-00039 — **Jane E. Magnus-Stinson**, *Judge*.

---

ARGUED FEBRUARY 16, 2016 — DECIDED AUGUST 30, 2016

---

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Inmate Joshua Waldman was convicted of forcibly assaulting a correctional officer after head-butting him during an argument about a pat-down search. He advanced a self-defense argument at trial, but was unsuccessful. On appeal, he argues that the district court erred in holding that there needed to be an imminent threat of death or serious bodily harm before he could justifiably use force in self-

defense. We agree. Requiring that an inmate fear serious bodily harm or death before using force to protect himself is inconsistent with both the Eighth Amendment and common law principles justifying the use of self-defense. But we find no clear error in the district court's finding that Waldman had a legal alternative to force in complying with the pat-down. So we affirm Waldman's conviction because he failed to prove at least one of the required components of his defense.

## I.  BACKGROUND

On June 30, 2013, correctional officer Jason Buescher and two of his fellow officers conducted random pat-down searches while inmates walked to the cafeteria in the Terre Haute Federal Correctional Complex. Waldman grabbed his winter coat before heading outside for lunch, even though it was warm out. Noticing Waldman wearing the winter coat, Buescher called Waldman for his pat-down search. Concerned that Waldman could be hiding contraband under the coat, Buescher ordered Waldman to take off his coat. The two began arguing and Waldman took the coat off, wadded it up, and threw it down next to Buescher. The testimony at trial conflicted as to how the argument turned physical.

### A. Waldman's Account of the Incident

Waldman testified that Buescher grabbed his left arm in a very hard grip and ordered Waldman to stand against a nearby wall. In his pretrial statement, Waldman stated that Buescher grabbed and threw him against the wall. But this was inconsistent with Waldman's trial testimony that someone he could not see had grabbed him and he walked to the wall on his own. He further testified that Buescher told him that he would "punk him out" in front of everyone. Multiple

defense witnesses testified that the men raised their voices and may have used profanity during the argument.

Waldman testified that Buescher then advanced toward him in a threatening manner, causing Waldman to fear harm. As Buescher completed his approach, Waldman reacted by head-butting him. Waldman testified that when Buescher stuck his fingers in Waldman's mouth and pushed his fingers into Waldman's eye socket, he bit Buescher's finger to get it out of his mouth and to stop the attack. Waldman admitted that it took two other officers to help Buescher to restrain him. Waldman suffered bruises to his face, head, and arms.

### B. Buescher's Account of the Incident

Buescher testified that after Waldman threw his jacket on the ground, he ordered him to stand against the wall for a pat-down search. Waldman initially followed his order and walked toward the wall, but as Buescher approached him, Waldman turned around quickly and head-butted him in the face, causing him to fall backwards. The other two officers conducting pat-down searches testified that they saw Waldman head-butt Buescher. Buescher testified that while he and the other two officers tried to restrain Waldman, Waldman flailed his legs around, tucked his arms under his chest, and bit Buescher's finger. Buescher said his hand dug into Waldman's eye socket as he tried to stop Waldman's biting. Buescher suffered a fractured nose, head injury, and a bite wound on his left index finger.

### C. Prior Proceedings

Waldman was indicted for forcibly assaulting, resisting, impeding, intimidating, or interfering with a corrections officer, in violation of 18 U.S.C. § 111(a) and (b). Following his

indictment, Waldman appeared before the district court for a one-day bench trial. At the close of evidence, the judge requested further briefing from the parties regarding Waldman's theory of self-defense, and specifically what constitutes unlawful force by a federal correctional officer acting in pursuit of his official duties.

After hearing arguments on what should be considered unlawful force, the district court held that in a prison setting, for an inmate to establish self-defense, he must face the imminent threat of death or serious bodily injury. Because Buescher's actions did not expose Waldman to a threat of imminent serious bodily injury or death, and Waldman could have complied with Buescher's orders to avoid escalation of the situation, the court found Waldman guilty and sentenced him to 60 months in prison.

## II. ANALYSIS

On appeal, Waldman challenges his conviction on two grounds: first, that the district court legally erred when it conditioned a prisoner's right of self-defense on the presence of an imminent threat of death or serious bodily injury, and second, that the district court factually erred when it found that Buescher did not expose Waldman to an imminent threat of harm and that Waldman had a reasonable legal alternative to head-butting Buescher. We review Waldman's challenge to the district court's legal conclusions de novo, and its factual findings for clear error. *United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 676 (7th Cir. 2014).

### A. Self-Defense under 18 U.S.C. § 111

While 18 U.S.C. § 111 does not explicitly address self-defense, when a statute is silent on the question of affirmative

defenses, we are to effectuate the defense as "Congress may have contemplated it," looking to the common law as a guide. *See United States v. Dixon*, 548 U.S. 1, 13-14 (2006). At common law, self-defense is the use of force necessary to defend against the imminent use of unlawful force. *See United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998) (citing Model Penal Code 3.04(1) (1962)). But what is unlawful force in a prison setting? Obviously correctional officers will sometimes need to use force to maintain order inside prison walls. The government urges that we adopt the definition of unlawful force used by the Fourth Circuit, and hold that an inmate is only permitted to use force in self-defense against a correctional officer if the inmate faces an "unlawful and present threat of serious bodily injury or death." *United States v. Gore*, 592 F.3d 489, 494 (4th Cir. 2010); *see also United States v. Jones*, 254 Fed. Appx. 711, 722 (10th Cir. 2007) (unpublished). But unlike the defenses of duress or necessity, fearing death or serious bodily harm is not required to make out a claim of self-defense. While using lethal force to defend oneself may require such a serious threat, under our own Pattern Instructions, non-lethal force (like head-butting, for example) does not contain such a requirement. *See* Pattern Criminal Jury Instructions of the Seventh Circuit 6.01 at 85 (2012).

Rather than fashioning our own definition of unlawful force in a prison setting, we look to the Eighth Amendment, which already sets the legal limits on prison officials' acts towards inmates.[1] Sometimes, it is within the bounds of the

---

[1] Three of our sister circuits have adopted a similar approach to analyzing what type of unlawful force justifies self-defense under Section 111 outside of prison walls. The Fifth, Sixth and Ninth Circuits have suggested that self-defense might be available under Section 111 when a defendant

Eighth Amendment for correctional officers to use force that would be unlawful outside of prison walls. That is because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges or rights, a retraction justified by the considerations of our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). And corrections officers face the difficult task of balancing the need to maintain or restore discipline through force against the risk of injury to inmates. *Hudson v. McMillian*, 112 S. Ct. 995, 999 (1992). So whether a prison security measure violates the Eighth Amendment turns on whether "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). We think this test is as useful in determining if an inmate is justified in using self-defense as it is in determining if a prisoner has an Eighth Amendment claim against his jailers.

The government argues that if self-defense is not contingent upon fearing serious bodily injury or death, inmates will be allowed to use force against guards any time they believe the officer might be using slightly more force than necessary against them. But such a danger is overblown. Prisoners will still need to prove their fear was *reasonable,* meaning that there was an objective reason to believe that officers intended to cause sadistic and malicious harm. That is not an easy burden.

---

uses force against a law enforcement agent who engages in excessive force against him first. *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) (citing *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992)); *United States v. Branch*, 91 F.3d 699, 715 (5th Cir. 1996); *United States v. Weekes*, 517 Fed. Appx. 508, 511 (6th Cir. 2013) (unpublished).

A prisoner cannot prevail under the Eighth Amendment because he "reasonably believed his handcuffs were too tight causing momentary interruption of his circulation." *Gore*, 592 F.3d at 495 (citing *Jones*, 254 F.App'x at 722). Indeed, under the Eighth Amendment, "not every push or shove by a prison guard violates a prisoner's constitutional rights." *United States v. DeWalt*, 224 F.3d 607, 620 (7th Cir. 2000). Similarly, the fear that "guards would second-guess every use of force to ascertain whether the force used exceeded, even by a bit, what was necessary" is no different than the fear that guards already have that they will be sued for using excessive force. *Gore*, 592 F.3d at 495 (internal citation omitted). So we hold that an inmate may act in self-defense if he reasonably fears imminent use of sadistic and malicious force by a prison official for the very purpose of causing him harm.

The opposite holding would prevent inmates from protecting themselves from sadistic and malicious acts which do not cause serious bodily harm, but which everyone can agree are egregious violations of the Eighth Amendment. For example, what about cases of sexual abuse of inmates? We have previously held that forcing a prisoner to perform sexually provocative acts in front of spectators is a viable Eighth Amendment claim. *Calhoun v. Detella*, 319 F.3d 935, 940 (7th Cir. 2003). Prisoners should not endure such abuse when they could easily act to stop it because they would risk being convicted of assaulting an officer. Under the federal definition of "serious bodily harm," without a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss of the function of a bodily member, organ or mental faculty, inmates would risk further incarceration if they tried to resist such abuse. *See* 18 U.S.C. § 1365 (h)(3) (defining "serious bodily harm"). In the midst of enduring abuse

by officials, prisoners should not be expected to calculate whether the requisite disfigurement or loss of bodily function will come to pass before acting to protect themselves. Such a result is not consistent with the Eighth Amendment, and would "give prison officials free reign to maliciously and sadistically inflict psychological torture on prisoners, so long as they take care not to inflict any physical injury in the process." *Calhoun*, 319 F.3d at 940. Under common law principles, requiring the threat of serious bodily injury or death certainly might be appropriate for use of *lethal* force in self-defense, *see, e.g., United States v. White Feather*, 768 F.3d 735, 740 (7th Cir. 2013). But in a case where a prisoner is simply acting to stop abuse completely untethered to official discipline, which can only be interpreted as sadistic, malicious, and intended to cause harm, she is entitled to act in self-defense. And while Congress clearly intended to protect correctional officers from harm in passing 28 U.S.C. § 111, that purpose must be harmonized with Eighth Amendment protections, not supersede them.

### B. No Error in Finding Waldman Had Reasonable Legal Alternative to Using Force

In addition to showing that the force threatened against them violated the Eighth Amendment, inmate-defendants have other hurdles to mount. They must prove that the unlawful use of force against them was imminent, and that they had no reasonable legal alternatives to using force in self-defense. *United States v. Haynes*, 143 F.3d 1089, 1092 (7th Cir. 1998).[2] The district court correctly evaluated whether Waldman had reasonable legal alternatives to striking Buescher,

---

[2] The district court appeared to place the burden of disproving self-defense on the government, which may have been an error. *See Dixon*, 548

which was a required element of his defense. While we are very dubious that Buescher used or threatened any force which violated the Eighth Amendment, we can affirm Waldman's conviction solely based on the district court's finding that he did not avail himself of legal alternatives to assaulting Buescher.

Waldman could have simply submitted to Buescher's search—which no one is arguing was itself a violation of Waldman's constitutional rights—instead of escalating the situation into a physical fight. Waldman insists that he did submit to the search and only used force after Buescher needlessly grabbed his arm and advanced toward him as if to strike him in the throat. But the district court was entitled to credit Buescher's version of the facts—that Waldman was the first aggressor, and used force before Buescher even touched him. We will not disturb the court's factual findings unless we are left with a definite and firm conviction that a mistake has been made, and if two permissible views of the facts exist, the fact-finder's choice between them cannot be clearly erroneous. *United States v. Breland*, 356 F.3d 787 (7th Cir. 2004). There was no clear error here. We see no basis for reversing the district court's factual findings, and agree with its conclusion that Waldman had reasonable alternatives to striking Buescher.

---

U.S. at 1 (no Constitutional requirement that government negates elements of a defense that does not negate an element of the charged offense; rather the allocation of proof depends on statute, or, in absence of clear guidance, common law). Because the government did not raise this issue on cross-appeal, and Waldman cannot prevail regardless of which party bears the burden of proof, we decline to rule on the burden of proof allocation for self-defense claims under Section 111.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Waldman's conviction.