# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 10, 2024        Decided January 21, 2025

No. 24-3016

UNITED STATES OF AMERICA,
APPELLEE

v.

RALPH JOSEPH CELENTANO, III, ALSO KNOWN AS RALPH
JOSEPH CELENTO, III,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cr-00186-1)

———

*Sarah Baumgartel*, Assistant Federal Public Defender, argued the cause for appellant. *Barry D. Leiwant*, Attorney-In-Charge, entered an appearance.

*T. Dietrich Hill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Matthew M. Graves*, U.S. Attorney, and *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant U.S. Attorneys.

Before: MILLETT and RAO, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Ralph Joseph Celentano, III was convicted by a jury on six counts and acquitted on a seventh count for unlawful conduct on January 6, 2021 at the United States Capitol. He challenges his convictions on three grounds and raises a series of challenges to his sentence. He contends that the district court erred in instructing the jury first, on his defense of another to Count One, which was prejudicial also to his convictions on Counts Two, Five, and Six, and second, on the knowledge requirement of 18 U.S.C. § 1752(a) for Count Three. He further contends that his conviction on Count Two must be vacated under the Double Jeopardy Clause of the Fifth Amendment as a lesser included offense of Count One. Finally, he contends that the district court's errors in calculating his Sentencing Guidelines range require resentencing. For the following reasons, the court reverses Celentano's conviction on Count One, vacates his sentence and remands for resentencing, and remands the case, except Count Seven, to the district court for further proceedings.

**I.**

On January 6, 2021, as the Supreme Court and this court have described, a crowd of supporters of then-President Donald Trump broke through barriers, police lines, and windows, assaulted law enforcement officers, and breached the United States Capitol, forcing delay of the certification of electoral votes pursuant to the Electoral Count Act for which both Houses of Congress and the Vice President had convened. *See Fischer v. United States*, 144 S. Ct. 2176, 2182 (2024); *United States v. Alford*, 89 F.4th 943, 947 (D.C. Cir. 2024). Celentano joined "an unruly mob" of protestors, *Alford*, 89 F.4th at 946, on the West Terrace of the Capitol grounds, where he was involved in altercations with uniformed law enforcement officers, including linking arms with other protestors and

marching into the police line, as well as pushing a law enforcement officer.

Of particular relevance, Celentano forcibly shoved Officer Kenrick Ellis off a ledge causing him to fall on top of other officers about four or five feet below. Trial Tr. 1327-34 (June 9, 2023); Supp. Ex. 603. Officer Ellis testified that a protestor who was being held had another officer in a chokehold and that he was delivering "tactical blows to that individual's arm, so they would . . . release the officer." Trial Tr. 856 (June 7, 2023). In defense, Celentano testified that he saw "officers were holding somebody in place and Officer Ellis was hitting him . . . and he kept hitting him" around the neck. Trial Tr. 1171 (June 8, 2023); Trial Tr. 1329 (June 9, 2023). Celentano explained that he was concerned because "strikes to the back of the head kill people." Trial Tr. 1171 (June 8, 2023). Celentano testified that he gave Officer Ellis a forceful body shove from behind in order to get him to stop. Trial Tr. 1334 (June 9, 2023). Celentano acknowledged that he was 20 to 30 feet behind Officer Ellis and could not see if the protestor being held was male or female much less see the protestor's hands or if the protestor had a weapon. *Id.* at 1329-30. Celentano claimed that he did not ask an officer for help to stop the beating because "[i]t seemed like every time you walked up to a cop, he'd hit you." *Id*. at 1332.

A grand jury indicted Celentano on seven counts. Count One charged Celentano with violation of 18 U.S.C. § 111(a) as one who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person . . . while engaged in or on account of the performance of official duties . . . where such acts involve physical contact with the victim of that assault or the intent to commit another felony." Count Two charged Celentano with violation of 18 U.S.C. § 231(a)(3) for "commit[ting] or attempt[ing] to commit any act to obstruct, impede, or interfere with any . . . law enforcement officer lawfully engaged in the lawful performance of his official

duties incident to and during the commission of a civil disorder." Count Three charged Celentano with violation of 18 U.S.C. § 1752(a)(1) for "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority." Count Four charged Celentano with violation of 18 U.S.C. § 1752(a)(2) for "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." Count Five charged Celentano with violation of 18 U.S.C. § 1752(a)(4) for "knowingly engag[ing] in any act of physical violence against any person or property in any restricted building or grounds." Count Six charged Celentano with violation of 40 U.S.C. § 5104(e)(2)(F) for "engag[ing] in an act of physical violence in the Grounds or any of the Capitol Buildings." And Count Seven charged Celentano with violation of 18 U.S.C. § 1512(c)(2) as one who "corruptly . . . obstructs, influences or impedes any official proceeding, or attempts to do so."

The jury found Celentano guilty on six counts and not guilty on Count Seven. Celentano and the government disagreed on the jury instructions, including the defense of another instruction, as well as the appropriate Guidelines range at sentencing. The district court sentenced Celentano to 78 months of imprisonment on Count One, 60 months on Count Two, 12 months on Counts Three, Four, and Five, and 6 months on Count Six, to run concurrently for a total of 78 months of imprisonment, as well as to 36 months of supervised release on Counts One and Two. At sentencing, the district court judge volunteered that he would have imposed the same sentence based on only Celentano's convictions on Counts One and Two. Celentano appeals.

## II.

The district court, over defense objection, instructed the jury on defense of another on Count One, 18 U.S.C. § 111(a) as follows:

> The Defendant has offered evidence that he acted in defense of another. The use of force is justified when a person reasonably believes that force is necessary for the defense of another against the immediate use of unlawful force.
>
> To find that the defendant was justified in using force against law enforcement officers, you must find that the exercise of force by law enforcement was unlawful, because it was objectively unreasonable; that is, excessive, *viewed from the perspective of a reasonable law enforcement officer*.
>
> *If you find* that the exercise of force by law enforcement was unlawful, *you may consider* whether the Defendant reasonably defended another from that unlawful exercise of force.
>
> In addition, if you find that the Defendant — the person the Defendant asserts he was protecting from imminent bodily harm was the *initial aggressor*, the Defendant cannot rely on the right of defense of another to justify his use of force.
>
> A person may use a reasonable amount of force in defense of another. A person may use an amount of force that, at the time of the incident, he actually and reasonably believes is necessary to protect another from imminent bodily harm.
>
> The question is not whether, looking back on the incident, you believe that the use of force in defense of another was necessary. The question is whether the Defendant, under the circumstances as they appeared to him at the time of the incident,

actually believed another was in imminent danger of bodily harm and could reasonably hold that belief.

Defense of another may be considered as a defense to Count 1 in the indictment, the count we've been just talking about. The Defendant is not required to prove that he acted in defense of another. Where evidence of defense of another is present *consistent with this entire instruction*, the Government must prove beyond a reasonable doubt that the Defendant did not act in defense of another. If the Government has failed to do so, you must find the Defendant guilty – I'm sorry – you must find the Defendant not guilty on Count 1.

Trial Tr. 1413-15 (June 9, 2023) (emphases added). The district court also instructed the jury to consider Celentano's defense of another defense on Counts Two, Five, and Six but only as to his acts with respect to Officer Kenrick Ellis. Trial Tr. 1219-20 (June 8, 2023); Trial Tr. 1423-25 (June 9, 2023).

Celentano contends that the defense of another instruction was erroneous and prejudicial in (1) directing consideration of the use of force from the perspective of a law enforcement officer rather than the defendant, and (2) requiring the jury to find that the force used was actually excessive before considering the defendant's self-defense claim. Instead, Celentano's position is that the jury should be instructed to "center on the defendant's own 'subjective perceptions,'" Appellant's Br. 37 (quoting *Fersner v. United States*, 482 A.2d 387, 391-92 (D.C. 1984)), and that to find him not guilty "it should have been sufficient if Celentano sincerely and reasonably believed [Officer] Ellis was using excessive force," *id.* at 38 (citing *Jones v. United States*, 555 A.2d 1024, 1027 (D.C. 1989)). Celentano also contends for the first time on appeal that the jury instructions contained a similar error in perspective for determining whether the third-party victim was

the "initial aggressor." *Id.* at 37 n.6 (citing *Fersner*, 482 A.2d at 392). The court declines to consider this unpreserved claim set forth in a footnote. *See United States v. Abdus-Price*, 518 F.3d 926, 934 (D.C. Cir. 2008) (citing *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984)); *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 93 n.3 (D.C. Cir. 2002).

The government's position is that no instructional error occurred because the law authorizes a law enforcement officer to use force in enforcing the law and consequently the jury's analysis of excessive force must "assess[] the situation from the officer's perspective." Appellee's Br. 21 (citing *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017)). In *County of Los Angeles*, the Supreme Court held that, for civil liability in an action under 42 U.S.C. § 1983, the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene." 581 U.S. at 428. The government also points out that the district court properly informed the jury that the burden of disproving defense of another beyond a reasonable doubt lies with the government. Appellee's Br. 25 (citing *United States v. Purvis*, 706 F.3d 520, 523 (D.C. Cir. 2013)).

**A.**

Although, as Celentano contends, the instruction should have directed the jury to consider the excessiveness of force from his perspective, neither Celentano's nor the government's position fully reflects what the law requires for a self-defense or defense of another instruction in the special context of law enforcement activities. The right of a defendant to assert a defense of self-defense and the defense of another "derives from common law impliedly recognized by Congress when enacting § 111." *United States v. Gore*, 592 F.3d 489, 493 (4th Cir. 2010). As the Supreme Court has long recognized, a defendant is allowed to use as much force as "he, at the

moment, honestly believed, and had reasonable grounds to believe, was necessary." *Beard v. United States*, 158 U.S. 550, 564 (1895). Because the law recognizes that law enforcement officers are authorized to use force in carrying out their responsibilities as long as the force is not excessive, *see Wardlaw v. Pickett*, 1 F.3d 1297, 1302 (D.C. Cir. 1993), courts have recognized that the affirmative defense of self-defense has limits and is generally available only in certain circumstances, including when the law enforcement officer has used excessive force. *See United States v. Waldman*, 835 F.3d 751, 754 n.1 (7th Cir. 2016); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012); *Robinson v. United States*, 649 A.2d 584, 587 (D.C. 1994); *Nelson v. United States*, 580 A.2d 114, 117-18 (D.C. 1990).

Because the defense of self-defense and defense of another are affirmative defenses against certain conduct by law enforcement officers, courts have recognized that "these general principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties." *United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996); *see also United States v. Hidalgo*, 736 F. App'x 255, 257 (2d Cir. 2018). The Supreme Court has acknowledged that Congress enacted Section 111 to "accord[] maximum protection to federal officers." *United States v. Feola*, 420 U.S. 671, 684 (1975). Absent a federal self-defense standard, the court may look to state law, *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008), including District of Columbia law, D.C. Code § 11-101; *Key v. Doyle*, 434 U.S. 59, 64 (1977). So, as the D.C. Court of Appeals has observed, "[t]he right to defend a third person is analogous to the right of self-defense, and like self-defense, can provide a complete defense to criminal charges." *Lee v. United States*, 61 A.3d 655, 657 (D.C. 2013) (discussing CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA).

For a defendant to succeed on self-defense or defense of another involving a law enforcement officer, then, the jury must find that the defendant actually and reasonably believed the officer was using excessive force. *See Waldman*, 835 F.3d at 755; *Acosta-Sierra*, 690 F.3d at 1126. How much force a reasonable law enforcement officer is entitled to use to achieve the needed restraint of a third party will depend on the particular circumstances. *See County of Los Angeles*, 581 U.S. at 427-28. Use of deadly force in defense of another requires that the jury find the defendant actually and reasonably believed that the third person "was in imminent peril of death or serious bodily harm," *United States v. Peterson*, 483 F.2d 1222, 1230 (D.C. Cir. 1973), and that the defendant used "reasonable force to repel the perceived attack," *Parker v. United States*, 155 A.3d 835, 845 (D.C. 2017). When the defendant uses non-deadly force, by contrast, he need only believe that the third person is in imminent danger of unlawful bodily harm. *See United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011); *Lee*, 62 A.3d at 658. The jury, in turn, must evaluate the reasonableness of the defendant's belief based on what the defendant knew and what the defendant reasonably could have determined from the surrounding circumstances. *See Acosta-Sierra*, 690 F.3d at 1126.

Here, the instruction given to the jury on the defense of another improperly required the jury to consider the use of force from a reasonable officer's perspective, rather than from Celentano's perspective. In addition, the instruction did not instruct the jury on the factors that the law requires to be taken into account in considering this defense in the special context of law enforcement actions. Troubling as well, the instruction prevented the jury from fairly evaluating Celentano's defense of another defense, barring consideration of his defense to Count One absent a finding Officer Ellis actually used unlawful or excessive force.

Without prescribing an exact formula as circumstances will vary, the jury instructions should have informed the jury that (1) The law authorizes law enforcement officers to use force in performing their duties as long as the force is not "excessive." (2) In the context of law enforcement, force is excessive when, under the surrounding circumstances, the officer uses an amount or type of force that is more than reasonably necessary to effectuate a seizure, arrest, detention, or other lawful action. (3) Those relevant circumstances can include, but are not limited to, whether the defendant or a third person posed an immediate threat to the safety of the officer or others; the possibility that the defendant or a third person was armed, violent, or dangerous; whether the defendant or a third person was actively resisting the officer; the number of persons with whom the officer was contending at the time; the duration of the officer's action; the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period; the relationship between the need for the use of force and the amount of force used; whether the physical force applied was likely to lead to unnecessary injury; and the extent of the defendant or third person's injury. (4) The defendant must actually and reasonably believe the officer is using such excessive force. And (5) the jury must evaluate the reasonableness of the defendant's belief based both on what the defendant knew and what the defendant reasonably could have determined from the surrounding circumstances. In addition to erroneously stating that a reasonable officer's perspective was paramount, the instructions on Celentano's defense of another did not adequately inform the jury of the factors it needed to consider in assessing his defense.

**B.**

The question remains whether the erroneous jury instruction on the defense of another, which applied to Counts One, Two, Five, and Six, was harmless. Celentano suggests

that the court apply the standard for constitutional errors because, in his view, the instruction impermissibly shifted the burden of proof from the government to him. *See United States v. Scott*, 529 F.2d 338, 340 (D.C. Cir. 1975). For those kinds of errors the court must find the error was harmless beyond a reasonable doubt. *United States v. Rhone*, 864 F.2d 832, 835 (D.C. Cir. 1989) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Celentano has not shown such error because the jury instruction provided that "the Government must prove beyond a reasonable doubt that the Defendant did not act in defense of another." Trial Tr. 1415 (June 9, 2023).

The general standard for harmless error, therefore, applies. Under that standard, *see Kotteakos v. United States*, 328 U.S. 750 (1946), the court considers "[i]f, in light of all the circumstances — the language of the instructions, the arguments of counsel, and the evidence itself — it is 'highly improbable' that the jury convicted on an improper theory, then 'technical errors in the instructions are deemed harmless,'" *Rhone*, 864 F.2d at 835. Where "these factors indicate a 'substantial possibility' that the jury convicted on an improper legal theory, then reversal is required." *Id.* Celentano contends that the evidence was sufficient such that "[i]f the jury credited the testimony of both Celentano and [Officer] Ellis, then it could have acquitted Celentano on the basis of self-defense: even if Celentano was wrong that [Officer] Ellis was using unlawful excessive force against this other protestor." Appellant's Br. 39.

In the government's view, even if the jury instruction on defense of another was erroneous, the error was harmless because there were other grounds upon which the jury could have rejected Celentano's defense. For example, the jury could reasonably have found based on the evidence that "(1) Celentano did not actually believe Officer Ellis was using excessive force; (2) the person Celentano purported to defend was the initial aggressor; or (3) Celentano used an unreasonable

degree of force." Appellee's Br. 26-27. Further, the government maintains, any error would be harmless on Counts Two, Five, and Six "because the record contained overwhelming evidence of other violent acts [by Celentano] sufficient to convict on those counts." *Id.* at 32.

On Count One, the government's case rested on Celentano and Officer Ellis's altercation and Celentano's defense centered on his defense of another protestor. The jury was instructed to consider whether Officer Ellis's use of force was unlawful from the perspective of a reasonable law enforcement officer. And the jury was instructed that it had to find Officer Ellis's use of force was unlawful or excessive for it to consider Celentano's affirmative defense. A correct jury instruction would instead have permitted the jury to find Celentano not guilty on Count One because he actually and reasonably believed, given what he could reasonably learn from his vantage point, that Officer Ellis was using excessive force, acknowledging that the officer is entitled to use non-excessive force as determined by the surrounding circumstances.

Evidence offered by Celentano and Officer Ellis provided different perspectives on the events preceding their interaction. Celentano saw a protestor being held and repeatedly beaten by a law enforcement officer. Officer Ellis saw a protestor holding another law enforcement officer in a chokehold. On this record there is a "substantial possibility" that the jury could have credited Celentano's testimony and found that (1) Celentano actually and reasonably believed Officer Ellis was using unlawful force given Celentano's vantage point; (2) Celentano actually and reasonably believed the other protestor was under threat of imminent bodily harm; (3) Celentano used reasonable counterforce that stopped the officer's conduct without inflicting unnecessary injury; and (4) there was insufficient evidence that the person Celentano purported to defend was the initial aggressor. *Rhone*, 864 F.2d at 835. Without clarity that

the erroneous jury instruction was harmless, the court vacates Celentano's conviction on Count One.

Unlike Count One, the instructional error was harmless in light of the evidence of Celentano's other interactions with law enforcement officers on the Capitol grounds on January 6 on which the jury could reasonably have found Celentano guilty on Counts Two, Five, and Six. On Count Two, Celentano admitted to "interfer[ing] with the officers." Trial Tr. 1339 (June 9, 2023); *see* 18 U.S.C. § 231(a)(3). On Counts Five and Six, evidence showed that Celentano engaged with law enforcement officers other than Officer Kenrick Ellis. Trial Tr. 1321-23, 1325-26 (June 9, 2023); *see* 18 U.S.C. § 1752(a)(4); 40 U.S.C. § 5104(e)(2)(F). It therefore appears "highly improbable" that the jury convicted Celentano on Counts Two, Five, and Six based on an improper legal instruction on Count One. *Rhone*, 864 F.2d at 835.

## III.

Celentano additionally raises a Double Jeopardy challenge to his conviction on Count Two. The Double Jeopardy Clause of the Fifth Amendment provides: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V.

Celentano contends that if the court declines to vacate Counts One and Two based on the instructional error, then his conviction on Count Two must be vacated because it is a lesser included offense of Count One, of which Celentano was convicted on the basis of both physical violence and intent to commit another felony, Count Two. Applying the standard in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), Celentano maintains that 18 U.S.C. § 111(a) makes it a felony to commit certain acts against federal officers performing official duties "where such acts involve physical contact with the victim of that assault or the intent to commit another

felony." The jury specifically found that "[t]he defendant made physical contact with Officer Kendrick [sic] Ellis" and "[t]he defendant acted with the intent to commit another felony," namely Count Two. Jury Verdict Form 1-2.

Because the court is vacating Celentano's conviction on Count One and remanding, the Double Jeopardy claim is no longer a live issue in this case. *See Kalka v. Hawk*, 215 F.3d 90, 97 (D.C. Cir. 2000). The district court can consider Celentano's Double Jeopardy argument in the first instance should the government decide to retry Celentano on Count One.

**IV.**

Celentano challenges the jury instructions on Counts Three, Four, and Five, which charged him with violating three different subsections of 18 U.S.C. § 1752(a) criminalizing "knowingly" committing certain actions within "restricted buildings or grounds." Appellant's Br. 41. The district court instructed the jury that the government had to prove that Celentano "knew the buildings or grounds were restricted and he knew he lacked lawful authority to enter or remain there," where "'restricted building or grounds' means any posted, cordoned-off or otherwise restricted area of a building or grounds where a person protected by the Secret Service is, or will be, temporarily visiting." Trial Tr. 1420 (June 9, 2023). Celentano maintains that the district court erred in refusing to instruct the jury that he "had to know that the Vice President or another Secret Service protectee was visiting the area." Appellant's Br. 46.

This challenge fails. In *United States v. Griffin*, 119 F.4th 1001 (D.C. Cir. 2024), the court held that Section 1752(a) "required only that [the defendant] knew that he had entered or remained in a 'posted, cordoned off, or otherwise restricted' area where he was not authorized to be," rejecting an interpretation of the statute that would require the government

to prove the defendant knew "that the Vice President's presence was the reason the grounds remained restricted." *Id.* at 1004.

## V.

Finally, Celentano maintains that the district court "relied on and used as its benchmark a Guidelines range that was substantially above Celentano's correct Guidelines range." Appellant's Br. 52-60. He urges that the district court erred in (1) applying an enhancement for "substantial interference with the administration of justice" for Count Three under *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024), which held that "'administration of justice' does not encompass Congress's role in the electoral certification process [and instead] refers to judicial, quasi-judicial, and adjunct investigative proceedings"; (2) relying on a finding that Celentano violated 18 U.S.C. § 1512(c)(2) even though he was acquitted on that charge and now that the Supreme Court has held a defendant is guilty under the statute only if he "impair[s] the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so," *Fischer v. United States*, 144 S. Ct. 2176, 2190 (2024); and (3) applying the wrong definition of "aggravated assault."

The government bears the burden of establishing that error "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992); *see United States v. Kpodi*, 824 F.3d 122, 129 (D.C. Cir. 2016). Reliance on an incorrect Guidelines range by the sentencing judge "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). But the Supreme Court has acknowledged that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist," as when the district court "thought the sentence . . . was appropriate irrespective of the Guidelines range." *Id.* at 200.

Here, the district court judge stated at sentencing: "[I]f I only had Counts 1 and 2 as counts of conviction before me . . . the offense level would be a 22 and that would yield a guidelines range of 41 to 51 months. In that case, because of all the factors I mentioned earlier . . . I would have varied up in that case to reach the same sentence I'm handing down to Mr. Celentano today." Sent. Tr. 107 (Jan. 30, 2024).

The court vacates Celentano's sentence. Several errors occurred in the Sentencing Guidelines calculation. The government concedes that the application of U.S.S.G. § 2J1.2 to Count Three was erroneous after *Fischer*, 144 S. Ct. at 2190. Following *Fischer*, U.S.S.G. § 3C1.1's two-point perjury enhancement is no longer relevant to Celentano's counts of conviction. In light of *Fischer* and vacatur of Celentano's conviction on Count One, the district court erred in applying U.S.S.G. § 2A2.2 to Count Two. And even though the district court stated it would sentence Celentano to the same term of imprisonment under a lower Guidelines range, the district court made that sentence contingent on Celentano's conviction on Count One, which no longer holds. Given these errors and the presumption in favor of resentencing when the district court miscalculates the Guidelines range, the court vacates Celentano's sentence and remands for resentencing.

Accordingly, the court vacates Celentano's conviction on Count One, vacates his sentence and remands for resentencing, and remands the case, except Count Seven, to the district court for further proceedings.